**IN THE UNITED DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TROY CONLEY SCHERR,** | § | |
| **individually and on behalf of all** | § | |
| **others similarly situated,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO.** |
| | § | |
| **v.** | § | _____ |
| | § | |
| | § | **NO JURY DEMAND** |
| **COOPER RESTARAUNTS INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

<u>**COLLECTIVE ACTION COMPLAINT**</u>

Comes Now the Plaintiff, Troy Conley Scherr, by and through his undersigned counsel, and states the following:

**I.     INTRODUCTION**

1.     Defendant Cooper Restaurants Inc. owns and operates two (2) Ruth's Chris Steak House restaurants, one in Mobile Alabama and the other in Ridgeland Mississippi.

2.     Plaintiff, Troy Conley Scherr started working for the Mobile restaurant around 2007 or 2008 while still in college.  He started as a Server's Assistant, i.e. busboy, and he worked his way up to the position of "Main Server."  The main servers are responsible for training new servers.

1

3.      He held a server position for the five year period prior to his resignation in August 2016.

4.      Defendant has a common pay policy under which Plaintiff worked along with the other servers at both of Defendant's Ruth's Chris restaurants, where servers were illegally paid $2.13 per hour for substantial non-tipped, as well as improper overtime compensation at the rate of 1 ½ times $2.13 per hour for hours worked in excess of forty (40) in a week.

5.      Ann Levine, General Manager, controls the day-to-day operations of Defendant's operations at its restaurant located at 2058 Airport Blvd., Mobile Alabama 36606, including the administration and enforcement of this illegal common pay policy.

## II.   JURISDICTION AND VENUE

6.      The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. The Court has subject matter jurisdiction over Plaintiff's FLSA claims based upon 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331-37.

7.      Venue in this district is proper pursuant to 28 U.S.C. § 1391 (b) – (d) because Defendant resides in this district, operates in this district, and its contacts with this district are greater than it has with any other district in the state.

## III.  PARTIES

8.     Defendant maintains its principal place of business, and registered agent at 118 North Royal Street, Mobile AL  36602.

9.     At all relevant times Plaintiff Scherr was a resident of and domiciled in the city of Mobile Alabama.

## IV.  FACTUAL ALLEGATIONS

10.     This action is brought pursuant to the FLSA, 29 U.S.C. '201 et seq. and, specifically, the collective action provision of the Act found at '216(b), for equitable and declaratory relief and to remedy violations of the wage provisions of the FLSA by Defendant.

11.     This action is brought to recover unpaid compensation, in the form of unpaid minimum wages and overtime compensation, owed to the Plaintiff and all similarly situated servers employed by Defendant.

12.     For up to three years prior to the filing of this Complaint, Defendant has had a uniform policy and practice of failing to pay servers overtime at appropriate overtime rates for hours worked in excess of 40 in a week.

13.     For up to three years prior to the filing of this Complaint, Defendant has had a uniform policy and practice of requiring employees to participate in an invalid tip sharing arrangement where Plaintiff and others similarly situated were required to share 6% of their tips with bartenders, server assistants, and food runners.

3

14.     This tip sharing arrangement was and is illegal because food runners are back of the house employees, primarily responsible for food preparation in the kitchen, and they have *de minimis* interaction with the customers leaving tips.

15.     Their work entails, cutting vegetables, making garnishes, plating food, etc. prior to the arrival of the restaurant's first customer.

16.     This work continues during the course of the shift, where they may or may not deliver food to standing trays in the table area for the Server to then serve the customer, or when the restaurant is not busy, a food runner may place the food in front of the customer. Such circumstances are unusual however because Server Assistant's are assigned to tables for the same purpose and they remain on the floor the entire shift compared to food runners who are based out of and work in the kitchen.  The restaurant busy time of the year is November – December, while the late spring through the summer months are slow.  During the remaining months, business is slow to moderate.

17.     The Mobile restaurant in particular is not a high volume establishment as evidenced by the fact that the restaurant was scheduled to close and that closure was only avoided by the Cooper family's subsequent purchase of the establishment to preserve their favorite local dining experience.

18.     Where a food runner places food in front of the customer at the average four-top table ordering a single course, the food runner is at the table mere

seconds.  Accordingly, in the most extreme instances where a food runner places food in front of the customer for during a four course meal lasting on average two hours, food runners interact with the customers less than four (4) minutes, or 0.03% of the time.

19.    In instances where large parties or involved, and a food runner may interact with a customer, Defendant cannot argue food runners are interacting with the tip paying customers because these customers do not pay tips.  Instead they are charged pursuant to contract a fixed rate service fee and that fee is property of the restaurant and not properly considered tips.

20.    Food runners are so inconsequential to the customer's experience, that only two food runners are scheduled to work if the restaurant has between 0-120 customers.  After 120 customers, a third food runner is scheduled and if 220 or more customers are expected, a fourth food runner is scheduled.  Food runners also arrive to the restaurant one to two-and-half hours prior to servers and up to two hours prior to the restaurants opening.

21.    As a result, for up to three years prior to the filing of this Complaint, Defendant has maintained an improper tip sharing arrangement in furtherance of a uniform policy and practice of improperly claiming a tip credit and paying sub-minimum wages to its servers.

22.    Lastly, for up to three years prior to the filing of this Complaint,

5

Defendant has had a uniform policy and practice of failing to pay appropriate minimum wages for <u>substantial non-tipped</u> work that it required its servers to perform before receiving their first customers and after their last customers departed.

## OVERTIME VIOLATIONS

23.   Plaintiff and all other similarly situated servers employed by Defendant were not paid overtime at the rate of time and one-half the minimum wage for all hours worked in excess of 40 in a week.

24.   Plaintiff and other similarly situated servers were required to clock in and out each day via Defendant's computer system for purposes of tracking each server's hours worked during a shift, revenues/sales during a shift, and to facilitate the input of orders and generate customers' bills during the shift.

25.   During the holidays and on special occasions and special events, Plaintiff and other similarly situated servers worked in excess of 40 hours in a week and such hours were captured by Defendant's computer system.

26.   Defendant paid Plaintiff $2.13 per hour for all hours worked forty or less in a week, regardless of whether the server was engaged in tipped work after the arrival of his or her first customer, and for non-tipped work in which no customers were present, including time in which servers were waiting to be engaged in work.

27.     Defendant illegally paid Plaintiff and similarly situated servers $3.20 per hour for each hour or fraction thereof worked in excess of forty hours in a week when the legally prescribed rate for such work is $3.63 per hour.

28.     Accordingly, Plaintiff and others similarly situated were denied proper overtime compensation.

## INVALID TIP SHARING ARRANGEMENT

29.     Defendant also required Plaintiff and other similarly situated servers to participate in an invalid tip sharing arrangement.

30.     At no time did Defendant provide Plaintiff and others similarly situated sufficient notice under § 203(m) as to Defendant's claim to a tip credit.

31.     Defendant required servers, including Plaintiff, to contribute 6% of their tips to bartenders, server assistants, and food runners.

32.     Under the FLSA, where an employer may pay the sub-minimum wage rate of $2.13 per hour, if the servers retain all of their tips, with the exception of tips redistributed via a valid tip sharing arrangement.

33.     A valid tip sharing arrangement is one in where tips are shared among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m).

34.     Defendant's requirement that Plaintiff and similarly situated servers share their tips with food runners invalidates the tip sharing arrangement because food runners do not meet the definition of a customarily and regularly tipped

employee. These food runners are not employed to engage with customers, they have *de minimis* interaction with the customers, they do not take customers' orders, and they have no expectation of receiving a tip directly from customers.

35.    Based on the forgoing, Defendant owes Plaintiff and others similarly situated the difference between the sub-minimum wage it paid and $7.25 per hour for each and every hour worked during the three year period preceding the filing of this lawsuit.

## SERVERS PERFORMING NON-TIPPED WORK

36.    Defendant also violated the minimum wage requirements of the FLSA by taking a tip credit against its minimum wage obligations for substantial non-tipped work it required Plaintiff and other similarly situated servers to perform.

37.    Except on Friday, the restaurant opens at 5:00 PM and closes at 10:00 PM.  On Fridays the restaurant is open from 11:30 AM – 10:00 PM.

38.    Servers are scheduled to work on a staggered basis at 4:00, 5:00, and 5:30 start times.

39.    On average Plaintiff and other similarly situated servers were required to clock in one plus (1+) hours before the arrival of their first tip paying customer and stay on average more than 40 minutes after their last tip paying customer left.

40.    Defendant's time clock records evidence this "pre-shift" and "post-shift" work; however, Plaintiff and similarly situated serves are not paid $7.25

8

per hour for this non-tipped work.

41.    The non-tipped duties performed during this pre and post shift time were outlined on bulletin board and assigned according to the server's start time. Duties were identified on this posting as daily, weekly, and/or as "Closing Duties."

42.    Examples of the work include washing and drying bread pans, restocking pads and printer paper, folding napkins, light janitorial duties, cleaning equipment, emptying trash, stocking supplies, polishing glassware, refilling condiments and other supplies, dusting, cleaning linen cabinets, dusting fans, stocking food items,  food prep., etc.

43.    Plaintiff and other similarly situated employees spent a substantial amount of time – in excess of 20% of their working time during a week – performing these non-tip-producing activities.

44.    Federal courts in the Middle and Southern Districts of Alabama have held that FLSA minimum wage claims for substantial non-tipped work are valid. *White, et al. v. The NIF Corp.*, 1:15-cv-00322-WS-N, Doc. 81, Order Granting Motion for Partial SMJ (S.D. Ala., Jan. 18, 2017); *Thomas, et al. v. Bayou Fox, Inc. et al.*, 1:15-cv-623-KS-GMB, Doc. 65, Order Denying MTD (M.D. Ala., May 31, 2017).

45.    Defendant failed to maintain records of the hours Plaintiff and the other

servers spent engaged in non-tipped producing activities vs. the hours engaged in tip producing activities.

46.    Plaintiff and other similarly situated servers are entitled to $7.25 per hour for all the time they were engaged in non-tipped duties, because such time was substantial and not occasional.  Defendant should have paid Plaintiff and all other similarly situated servers the minimum cash wage of $7.25 for the pre- and or post-shift time, as it occurred at regularly recurring times designated by Defendant at distinct intervals in which the server was not also engaged in tip producing work while waiting on customers..

47.    Defendant improperly claimed the FLSA tip credit (29 U.S.C. §203(m)) for time spent performing this non tip-producing work.

48.    Time spent on these non-tip producing activities was not occasional, incidental, or insignificant; it was substantial and regular.

49.    Plaintiff and all other similarly situated servers were subject to Defendant's illegal pay practices, and are similarly situated for purposes of their job duties.

50.    Plaintiff and all similarly situated servers who elect to participate in this action seek misappropriated unpaid minimum wages and overtime compensation, an equal amount of liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. §216(b).

## V.  FLSA COLLECTIVE ACTION ALLEGATIONS

51.    At all times material to this action, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce as defined by §203(s)(1) of the FLSA.

52.    Defendant is an interstate company whose employees are engaged in interstate commerce and whose employees handle and/or work on goods that have been moved in and/or produced in commerce.

53.    Defendant's annual gross volume of business exceeds $500,000.00.

54.    At all times relevant to this action, Defendant is or has been an "employer" of Plaintiff as defined by §203(d) of the FLSA.

55.    At all times material to this action, Plaintiff and all others similarly situated servers were "employees" of Defendant, as defined by §203(e)(1) of the FLSA. They also worked for Defendant within the territory of the United States within three years preceding the filing of this lawsuit.

56.    The provisions set forth in §207 of the FLSA apply to Defendant, and the Plaintiff and all similarly situated servers were covered by §207 of the FLSA during their employment with Defendants.

57.    Plaintiff and all similarly situated servers employed by Defendant were individually engaged in interstate commerce and/or the production of goods for

interstate commerce while working for Defendant. Their interstate commerce activity included, but was not limited to, serving customers who were traveling in interstate commerce, serving food that originated out of state of flowed through interstate commerce, and processing credit card transactions that crossed state lines.

58.   Defendant has intentionally failed and/or refused to pay Plaintiff and all other similarly situated servers according to the provisions of the FLSA.

59.   Defendant's systems and practices relating to its invalid tip pooling/sharing arrangement, non-payment of minimum wages, and improper payment of overtime to Plaintiff and all similarly situated servers, all violate the requirements of the FLSA.

60.   There are numerous similarly situated servers who have been improperly compensated in violation of the FLSA who would benefit from the issuance of Court Supervised Notice of the present lawsuit and the opportunity to join the present lawsuit.

61.   These similarly situated employees are known to Defendant and are readily identifiable and can be located through Defendant's records – specifically, all servers who have been employed by Defendant and have not been properly compensated would benefit from Court Supervised Notice and the opportunity to join the present lawsuit and should be so notified.

62.   In addition to the amount of unpaid wages and benefits owed to the Plaintiff and all other similarly situated servers, they are also entitled to recover an additional equal amount as liquidated damages, pursuant to 29 U.S.C. §216(b), and pre-judgment interest.

63.   Defendant's actions in failing to properly compensate Plaintiff and all other similarly situated servers were willful.

64.   Defendant has not made a good faith effort to comply with the FLSA.

65.   Plaintiff and those similarly situated are also entitled to an award of attorney's fees and costs pursuant to 29 U.S.C. §216(b).

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated servers, pursuant to §216(b) of the FLSA, prays for the following relief:

i)   At the earliest possible time, that he be allowed to give notice, or that the Court issue such Notice, to all servers who have been employed by Defendant in the last three years;

ii)  An order awarding damages in the amount of their respective unpaid compensation, plus an equal amount of liquidated damages pursuant to 29 U.S.C. §216(b), and/or prejudgment interest;

iii) An order pursuant to the Declaratory Judgment Act finding Defendant's practices illegal and in violation of the FLSA;

iv) An order awarding reasonable attorneys' fees, including the costs and expenses of this action;

v) Such other legal and equitable relief including, but not limited to, any declaratory relief to which they may be entitled.

Dated: July 24, 2017                    Respectfully submitted,


                                        s/ Robert J. Camp
                                        ROBERT J. CAMP
                                        rcamp@wigginschilds.com
                                        WIGGINS, CHILDS, PANTAZIS,
                                        FISHER & GOLDFARB, LLC
                                        The Kress Building
                                        301 19th Street North
                                        Birmingham, Alabama 35203
                                        (205) 314-0500


                                        Counsel for Plaintiff