IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TROY CONLEY SCHERR, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 17-00338-CG-N |
| | ) | |
| COOPER RESTAURANTS, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the Court on the parties' joint motion to approve settlement (Doc. 35). The parties jointly agree and assert the proposed settlement "constitutes a fair and reasonable resolution" of a "bona fide dispute." (*Id.* at ¶ 6; 3). For the reasons stated below, the parties' joint motion is **GRANTED**, and the proposed settlement agreement is hereby **ADOPTED**.

## I. FACTUAL BACKGROUND

Plaintiff Tony Scherr ("Plaintiff") filed this action against Defendant Cooper Restaurants, Inc. ("Defendant") on July 24, 2017 alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Prior to his resignation in August 2016, Plaintiff worked as a "Main Server" at Defendant's Ruth's Chris Steak House restaurant in Mobile, Alabama. (Doc. 29 ¶¶ 1-5). Plaintiff alleges Defendant "violated the minimum wage requirements of the FLSA by taking a tip credit against its minimum wage obligations for substantial non-tipped work it required

Plaintiff to perform." (Doc. 29 ¶ 13). Accordingly, he contends Defendant illegally paid him only $2.13 for non-tipped duties. *Id.* at ¶ 4.

On average, Plaintiff was required to clock in approximately one hour before his first tip paying customer (i.e. pre-shift) and stay forty (40) minutes after his last tip paying customer (i.e. post-shift). *Id.* at ¶ 16. Plaintiff's traditional non-tipped duties performed during pre-shift and post-shift included washing and drying dishes, light janitorial duties, and food prep. *Id.* at ¶ 19. He asserts he spent approximately 31% of his total employment time completing pre-shift and post-shift non-tipped duties. (Doc. 20, p. 4 ¶ 6(d)).

Plaintiff contends he is entitled to "unpaid minimum wages during the two year period preceding the filing of his lawsuit, an equal amount of liquidated damages, attorneys' fees, and costs" under the FLSA. (Doc. 29 ¶ 26). Defendant, however, denies the allegations, liability, and damages asserted in Plaintiff's lawsuit. (Doc. 35-1, p. 2).

## II. STATEMENT OF THE LAW

Congress enacted the FLSA to protect employees from substandard wages and excessive working hours; its provisions are mandatory and not subject to bargaining between employers and employees. *Lynn's Food Stores v. United States Dep't of Labor,* 679 F.2d 1350, 1352 (11th Cir. 1982). An employee's claim for overtime pay under the FLSA may be compromised in only two ways: (1) with payment in full of back wages, supervised by the Secretary of Labor, with the employee giving up a right to sue for unpaid wages and liquidated damages; or (2)

by stipulated judgment entered by a court in an FLSA action brought against the employer, entered after the court has "scrutiniz[ed] the settlement for fairness." *Id.* at 1352–53.

The court may approve a settlement that presents a reasonable compromise over issues that are actually in dispute with regard to pending FLSA claims. *Id.* The Eleventh Circuit has noted the FLSA "contemplates that 'the wronged employee should receive [her] full wages plus the penalty without incurring any expense for legal fees or costs.'" *Silva v. Miller,* 307 F. App'x 349, 351 (11th Cir. 2009) (unpublished opinion) (citing *Maddrix v. Dize*, 153 F.2d 274, 275–76 (4th Cir. 1946)). Additionally, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Id.* Counsel for a plaintiff must disclose the extent to which a plaintiff's FLSA claim has or will be compromised by the deduction of attorney's fees, costs or expenses pursuant to a contract between a plaintiff and his counsel, or otherwise. *See id.* Furthermore, the Court should be mindful of the strong presumption in favor of finding a settlement fair. *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977).[1]

---

[1] All decisions from the Fifth Circuit Court of Appeals made before September 30, 1981 serve as binding precedent on the Eleventh Circuit Court of Appeals. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. Nov. 3, 1981).

## III. REVIEW OF THE PROPOSED SETTLEMENT

### A. Fair and Reasonable Settlement

The parties have agreed Defendant shall pay Plaintiff a total of $7,500 in three payments: $2,952.50 as a settlement of unpaid back wages, $2,952.50 for liquidated damages, and $1,595.00 as separate consideration for Plaintiff's agreement to the general release and confidentiality provisions of the settlement agreement and release. (Doc. 35-1 ¶ 1). The parties "recognize and acknowledge that the expense in time and money of litigation, the uncertainty and risk of litigation, as well as the difficulties and delays inherent in such litigation, make settlement of this matter a mutually appealing resolution." (Doc. 35 ¶ 2). In reaching this agreement, the parties evaluated "payroll and time records for Plaintiff during the relevant period." (Doc. 23-1, p. 6; *See also* Doc. 35-1 ¶ 1). The parties represent the agreement is fair and reasonable based on the following:

> For the period May 17, 2016 to August 16, 2016, Scherr maintained records of hours he alleges he was on the clock before his first customer of the shift arrived and after his last customer of the shift departed. In the spirit of compromise the parties used this information to calculate the average time he was on the clock but not assigned a customer as a percentage of his total hours on the clock. Thirty-one percent (31%) was the resulting average....

> To calculate Scheer's damages, the parties next used the two-year period evidenced in Defendant's verified summary (Document 23-1) to determine Scherr was on the clock 1860.20 hours during that period. Accordingly, the parties determined at best, Scherr could recover compensation for 576.66 hours (1860.2 multiplied by 31%) in which he alleges he was engaged in non-tipped work with no customer assigned to him. Since Scherr was already paid $2.13 for each of these hours, at best his unpaid back wages totaled $2,952.50, or $5,905.00 including liquidated damages. (Doc. 35-1 ¶ 1).

4

The Court finds the proposed payment of back wages represents a fair and reasonable settlement of a bona fide dispute negotiated by qualified counsel in accordance with the FLSA. *Lynn's Food Stores*, 679 F.2d at 1354.

The parties have further agreed Defendant shall pay $12,500.00 for attorney's fees and expenses. (Doc. 35-1 ¶ 1). For attorney's fees, the Court typically will determine the "lodestar" figure, which is composed of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Court, however, has recognized that "a lodestar analysis is not always required." *Lyons v. Beef 'O' Brady's, FSC Franchise Co.*, No. 15–170–CG–N, 2015 WL 5602452, at *2 (S.D. Ala. Sept. 23, 2015). When "the fee [is] negotiated separately and without regard to the amount paid to the Plaintiff," the Court may forego the lodestar analysis. *Id.* at *3. The parties indicate the payment of Plaintiff's attorney's fees and costs "do not compromise or reduce Plaintiff's recovery and they were determined at Plaintiff's counsel's request, separate and apart from the Plaintiff's settlement amounts, and only after those amounts were accepted by the Plaintiff." (Doc. 35 ¶ 9). Therefore, the Court finds that the attorney's fees do not affect the fairness and reasonableness of the settlement.

**B. Confidentiality and General Release Provisions**

The Settlement Agreement and Release also contains a confidentiality clause (Doc. 35-1 ¶ 7) and general release provision (Doc 35-1 ¶ 4).

Confidentiality clauses are generally disallowed in FLSA actions because of the private-public character of an FLSA action and the regulatory effect of the FLSA. *See*, *e.g.*, *Robertson v. Ther-Rx Corp.*, No. 2:09cv1010–MHT(WO), 2011 WL 1810193, at *3 (M.D. Ala. May, 12, 2011) (striking the confidentiality provision and explaining that "[s]ettlements under the FLSA involve not only the parties, but the public") (citing *Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1242 (M.D. Fla. 2010) ("[A] confidentiality provision furthers resolution of no bona fide dispute between the parties; rather, compelled silence unreasonably frustrates implementation of the 'private-public' rights granted by the FLSA and thwarts Congress's intent to ensure widespread compliance with the statute.") and *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1264 (M.D. Ala. 2003) ("Absent some compelling reason, the sealing from public scrutiny of FLSA agreements between employees and employers would thwart the public's independent interest in assuring that employees' wages are fair and thus do not endanger the national health and well-being.")). Similarly, courts are hesitant to approve pervasive releases in FLSA settlements because any discount or devaluation of the consideration for the FLSA claim as a result of this release renders the FLSA settlement unfair and unreasonable. *See, e.g.*, *Alnoubani v. M.E.F. Food, Inc.*, 2012 WL 4746242, at *2–3 (M.D. Fla. Aug. 30, 2012).

However, in numerous cases, judges have approved settlement agreements where an employee receives additional consideration in exchange for concessions to the employer that go beyond release of the FLSA claim. *See, e.g.*, *Smith v. Aramark Corp.*, 2014 WL 5690488, at *4 (M.D. Fla. Nov. 4, 2014)(approving settlement

agreement where Plaintiffs received separate consideration in exchange for a general release and waiver, ADEA waiver, confidentiality clause, and non-disparagement agreement); *Caamal v. Shelter Mortg. Co.*, L.L.C., 2013 WL 5421955, at *4 (M.D. Fla. Sept. 26, 2013)(approving settlement agreement where Plaintiff received $500.00, a mutual release of claims, and an agreement to provide a neutral reference in exchange for a general release of claims, non-disparagement agreement, and waiver of future employment); *Bacorn v. Palmer Auto Body & Glass,* 2012 WL 6803586 (M.D. Fla. Dec.19, 2012), report and recommendation adopted, 2013 WL 85066 (M.D. Fla. Jan.8, 2013)(approving a settlement agreement where employee signed a general release in exchange for a mutual release from employer); *Bright v. Mental Health Resource Center, Inc.*, 2012 WL 868804, at *5 (M.D. Fla. Mar. 14, 2012)(approving the settlement agreement as to one employee who signed a general release in exchange for the employer foregoing its counterclaims against her); *Vergara v. Delicias Bakery & Rest., Inc.*, 2012 WL 2191299, at *2–3 (M.D.Fla. May 31, 2012), report and recommendation adopted, 2012 WL 2191492 (M.D.Fla. Jun.14, 2012) (approving settlement where general release by employee was exchanged for a mutual release by employer); *Rappaport v. Embarq Mgmt. Co.*, 2008 WL 4642593, at *2 (M.D.Fla. Oct.17, 2008)(approving settlement agreement where employee received separate monetary compensation in consideration for signing a general release).

In this agreement, the parties concur Defendant will pay Plaintiff $1,595.00 as consideration for the general release and confidentiality. (Doc. 35-1 ¶ 1). Because

this amount is separate beyond that arguably due under the FLSA, the confidentiality provision and general release do not render the settlement unfair or unreasonable.

## IV. CONCLUSION

For the reasons stated above, the joint motion to approve settlement (Doc. 35), is **GRANTED**, the settlement agreement and release (Doc. 35-1) is **APPROVED**, and the case hereby is **DISMISSED with prejudice**.

**DONE** and **ORDERED** this 7th day of May, 2018.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE